# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| MATTHEM R. BONNE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:04-CV-440 |
| ) | (Phillips) |
| PREMIER ATHLETICS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This a wrongful death case involving parties with diversity under 28 U.S.C. § 1332. Defendants, Premier Athletics, LLC, USA Gymnastics and United States Gymnastics Federation, have moved for summary judgment as to plaintiffs' claims. The parties have filed extensive briefs pertaining to the motion for summary judgment in which they have fully briefed all of the issues and submitted record evidence in support of the parties' positions. The court has reviewed the briefs and evidence submitted, and does not feel that oral argument is necessary. For the reasons which follow, the motion will be granted as to the claims of Aaron Bonne, Brooke Bonne, Trey Bonne, and Andrew Bonne. In all other respects, the motion will be denied.

## **Background**

This case involves a tragic accident that occurred on January 17, 2004, during the John Macready Flip Fest Invitational in Knoxville, Tennessee. The plaintiffs' son, Jordan Bonne, was competing in a trampoline event when he fell off the trampoline, hitting his head on the concrete floor. Jordan died from his injuries two days later.

Defendant, Premier Athletics, was the host organization, sponsor and facilitator of the event, which was sanctioned by USA Gymnastics (USAG). Defendants USAG and the United States Gymnastics Federation (USGF) are the national governing bodies for the sport of gymnastics in the United States. Their principal place of business is in Indiana but they sanction gymnastic events all over the United States. At the time of the accident, Jordan was classified as a junior elite trampolinist according to USAG. Junior elite is the second highest classification in USAG sanctioned competition. Jordan had competed in numerous local, state and national competitions, and had recently competed internationally in his age group. Jordan competed in both the synchronized and individual trampoline events. The day before the accident, Jordan had competed in synchronized trampoline competition at Flip Fest.

Jordan was a member of the Top Flight Gymnastics Team. Jordan was also a member of USAG. In order for a gymnast to compete in a USAG sanctioned event, USAG requires all participants to be a member of USAG. For membership, USAG requires athletes to complete an "Athlete Member Application" every year. Membership is required

to compete in USAG sanctioned events. Section Five of the membership application directs parents to read the reverse side of the application. Paragraph 3 of Section 5 includes the following language:

> **WAIVER AND RELEASE.** I am fully aware of and appreciate the risks, including the risk of catastrophic injury, paralysis, and even death, as well as other damages and losses associated with participation in a gymnastics event. I further agree that USA Gymnastics, the host organization, and sponsor(s) of any USA Gymnastics sanctioned event, along with the employees, agents, officers and directors of the organization, shall not be liable for any losses or damages occurred as a result of my participation in the event, except for such loss or damage as the result of the intentional or reckless conduct of one of the organizations or individuals identified above.

Section 6 of the Athlete Member Application provides as follows:

> All signatures required for acceptance of membership . . .
>
> Required for any athlete who is not yet eighteen years old: As legal parent or guardian of this athlete, I hereby verify by my signature below, that I fully understand and accept each of the conditions listed in the Athlete Membership Agreement as described in Section Five for permitting my child to participate in any USA Gymnastics sanctioned event.

This 2004 membership application was signed by Jordan's mother, Shirley Bonne in December 2003. Mrs. Bonne stated that she most likely signed the document in Kentucky as it was her habit to do so. In previous years, Shirley Bonne had signed similar forms containing the same waiver and release language. Jordan had also signed forms with identical waiver and release language in the past.

Top Flight Gymnastics had a similar waiver and release in its registration form. The Top Flight Gymnastics registration form provided:

> As legal guardian of Jordan Bonne, I hereby consent to the above person's participation in Top Flight Gymnastics' programs, I recognize that potentially severe injuries, including permanent paralysis or death can occur in any activity involving height or motion, including gymnastics and related activities, including tumbling and trampoline.
>
> I understand that it is the express intent of Top Flight Gymnastics to provide for the safety and protection of my child, and, in consideration for allowing my child to use these facilities, I hereby forever release Top Flight Gymnastics, its officers, employees, teachers, and coaches, from all liability for any and all damages and injuries suffered by my child while under the instruction, supervision, or control of Top Flight Gymnastics or its employees.
>
> . . .
>
> This acknowledgment of risk and waiver of liability, having been read thoroughly and understood completely, is signed voluntarily as to its content and intent.

This waiver and release was signed by Shirley Bonne on January 7, 1999.

Top Flight T&T, a booster club that supported Top Flight Gymnastics required a similar waiver and release for athletes who participated in its programs. This waiver and release stated:

> As legal guardian of Jordan Bonne, I hereby consent to the above person's participation in Top Flight's T&T Boosters programs. I recognize that potentially severe injuries, including permanent paralysis or death can occur in any activity involving height or motion, including tumbling and trampoline.

> I understand that it is the express intent of Top Flight T&T Boosters to provide for the safety and protection of my child, and, in consideration for allowing my child to use these facilities, I hereby forever release the Top Flight T&T Boosters, its officers, employees, teachers and coaches from all liability for any and all damages and injuries sustained by my child while under the instruction, supervision, or control of Top Flight T&T Boosters or its employees.
>
> . . .
>
> This acknowledgment of risk and waiver of liability, having been read thoroughly and understood completely, is signed voluntarily as to its content and intent.

Matthew Bonne, Jordan's father, had also signed similar waiver and release forms for Jordan. He testified via deposition that he "probably" signed the Top Flight Registration Form. He acknowledged that he signed the booster club form. In the case of both these forms, he stated that he did not recall whether he read them before signing. Matthew Bonne traveled with his son on several occasions to different gymnastics events, including one that was held in Russia. He also attended several of Jordan's practices.

As a result of the accident at Flip Fest on January 19, 2004, plaintiffs filed the instant action for the wrongful death of Jordan. The plaintiffs are residents of Ohio. In their complaint, Matthew and Shirley Bonne, individually and as next friends, parents and natural guardians of Jordan, sued Premier, USAG and USGF. Further, the Bonnes, as next friends, parents and guardians of Aaron Bonne, Brooke Bonne, Trey Bonne and Andrew Bonne (Jordan's siblings) sued defendants contending that USAG and USGF were

negligent in that they sanctioned an event which failed to provide a safe environment, utilized untrained spotters, failed to ensure sufficient floor matting, failed to require experienced and trained spotters, and failed to require sufficient safety matting.  As a result of defendants' alleged negligence, plaintiffs seek damages including parental and sibling consortium, expenses, and the pecuniary value of Jordan's life.

Defendants USAG and USGF have moved for summary judgment asserting that the releases signed by Shirley and Matthew Bonne bar all claims against defendants. The releases exclude USAG and USGF from any liability resulting from injuries occurring in sanctioned events.  As the host organization, sponsor and facilitator of the Flip Fest event, Premier is also expressly excluded from liability.

## **Analysis**

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to conclusively show that no genuine issue of material fact exists.  The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  Once the moving party presents evidence

sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Choice of Law

Defendants argue that Ohio law should apply to the interpretation of the USAG membership application which contains an exculpatory clause. Plaintiffs, on the other hand, argue that Tennessee law is the correct choice of law to apply to determine the rights and liabilities of the parties. Plaintiffs further argue that Tennessee public policy prohibits the enforcement of exculpatory clauses by parents on behalf of their minor children and thus, the USAG waiver is void in this case.

The plaintiffs reside in Ohio. Defendants' motion for summary judgment states that Mrs. Bonne completed and signed Jordan's USAG member application in Ohio. However, Mrs. Bonne stated in her affidavit, that she most likely signed the application in Kentucky, where the Top Flight gym is located. The application was sent to and received by USAG in Indiana.

A federal court in a diversity case applies the law of the state in which the court sits, including the state's choice of law rules. *Davis v. Sears, Roebuck and Co.,* 873 F.2d 888, 892 (6th cir. 1989) (citing *Erie R.R.Co. v. Tompkins,* 304 U.S. 64 (1938). It is not clear from the defendants' motion whether they dispute that plaintiffs' tort claims are to be analyzed under applicable Tennessee law. However, they do dispute whether Indiana, Kentucky, Ohio, or Tennessee law governs the analysis of the release and waiver provisions at issue. Defendants assert in their motion that this is a contract dispute which should be analyzed under Tennessee's choice of law rules related to contract claims. The court disagrees. This is a wrongful death action based upon tort, not contract. As regards the effect of the waiver and release between the parties, it will be determined by the law that governs the substantive tort rights of the parties.

The Tennessee Supreme Court in *Hataway v. McKinley,* 830 S.W.2d 53 (Tenn. 1992), adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws, § 175, to determine the rights and liabilities of the parties in a wrongful death case. Section 175 provides:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, to which event the local law of the other state will be applied.

The accident causing Jordan's death occurred at the Flip Fest in Knoxville, Tennessee. Thus, under the "most significant relationship" test, Tennessee law applies unless another

state has a more significant relationship. To determine if another state has a more significant relationship, § 145 of the Restatement provides factors to be weighed and balanced. Those factors are (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.

Applying this test to the instant case, as stated above, Tennessee is where the injury and death occurred. Second, Tennessee is the place where the conduct causing the injury occurred. Third, the plaintiffs are residents of Ohio, USAG and USGF have their principal place of business in Indiana, but they sanction gymnastic events all over the United States. Premier is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee. Last, the relationship between the parties was centered in Tennessee because Jordan's death occurred while he was participating in Flip Fest in Knoxville. The Flip Fest competition in Knoxville was the only mutual and central contact these parties had with one another. Therefore, it is clear that Tennessee is the state that has the "most significant relationship" with the parties in this case. Thus, Tennessee choice of law rules dictate that Tennessee tort law applies.

In a tort action, the effect of a release between the parties is determined by the law that governs the substantive tort rights of the parties. *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989) (citing to Restatement (Second) of Conflicts of Laws, §

170, Comment b). As Tennessee law governs the rights and liabilities of the parties in the tort action, Tennessee law will also be applied to interpret the effect of the release and waiver provisions in the USAG application.

Effect of Waiver & Release

In *Childress v. Madison County,* 777 S.W.2d 1 (Tenn.App. 1989), the Tennessee Court of Appeals noted that "[t]he general rule is that a guardian may not waive the rights of an infant or an incompetent." *Id.* at 6 (citing 39 Am.Jur.2d *Guardian & Ward,* § 102 (1968); 42 Am.Jur.2d *Infants* § 152 (1969)). As in *Childress,* Jordan's rights could not be contracted away by his mother in the State of Tennessee. It is Tennessee's stated public policy to protect minors and prohibit exculpatory releases for them. Mrs. Bonne could not execute a valid release or exculpatory clause as to the rights of her son against USAG, or anyone else, and to the extent the parties to the release attempted and intended to so do, the release is void.

Moreover, exculpatory clauses purporting to contract against liability for intentional conduct, recklessness or gross negligence are unenforceable. *See Childress,* 777 S.W.2d at 5*; Adams v. Roark,* 686 S.W.2d 73 (Tenn. 1985). Plaintiffs' complaint alleges defendants' failure to provide a safe environment, failure to utilize trained spotters, and failure to ensure sufficient safety matting, all constitute gross negligence and reckless conduct. Defendants have not challenged these allegations in their motion for summary judgment. Thus, accepting plaintiffs' allegations as true, the release at issue here would

-10-

not shield defendants for liability for their gross negligence and reckless conduct. Accordingly, defendants' motion for summary judgment based on the waiver and release will be denied.

Claims of Jordan's Siblings

Defendants assert that since both Jordan's parents are living and are named as plaintiffs in this actions, no right to sue on Jordan's behalf has passed to his siblings. Thus, the claims of Aaron Bonne, Brooke Bonne, Trey Bonne and Andrew Bonne, should be dismissed as a matter of law.

The statutes permitting an action for the wrongful death of another create "no right of action existing independently of that which the deceased would have had, had he survived." *Rogers v. Donelson Hermitage Chamber of Commerce,* 807 S.W.2d 242, 245 (Tenn.App. 1990); *Memphis St. Ry. Co., v. Cooper,* 313 S.w2d 444, 447 (1958). Although living beneficiaries of the deceased may seek a limited recovery for their own losses in addition to those of the decedent, *see Hill v. City of Germantown,* 31 S.W.3d 234, 239 (Tenn. 2000); *Jordan v. Baptist Three Rivers Hosp.,* 984 S.W.2d 593, 598 (Tenn. 1999), the right of action itself remains one that is "single, entire and indivisible." *See Wheeler v. Burley,* No. 01A01-9701-CV-00006 (Tenn.App. Aug. 27, 1997). Therefore, "there can be but one cause of action for the wrongful death of another." *Mathews v. Mitchell,* 705 S.W.2d 657, 660 (Tenn.App. 1985).

Because multiple actions may not be brought to resolve a single wrongful death claim, the statutes carefully prescribe the priority of those who may assert the action on behalf of the decedent and any other beneficiaries. In a dispute between the surviving spouse and the children of the decedent as to who may maintain the action, the surviving spouse clearly has "the prior and superior right above all others." *Foster v. Jeffers,* 813 S.W.2d 449, 451 (Tenn.App. 1991); *see also* Tenn. Code Ann. § 20-5-107. In fact, the children of a deceased may maintain an action only if the decedent is not survived by a spouse or if the surviving spouse has waived his or her right of priority. *Id.* Applying Tennessee law to the instant case, the court finds that Jordan's parents have a superior right, as opposed to Jordan's siblings, to maintain this cause of action against defendants for the wrongful death of Jordan.

Recognizing that a claim for loss of consortium does not represent a claim for damages separate from the wrongful death action itself, but rather embodies one component of the decedent's pecuniary value of life, the Tennessee Supreme Court has held that a trial court should dismiss any other pending wrongful death actions upon proper filing of an action by party holding a superior right. *See Kline v. Eyrich,* 69 S.W.3d 197, 208 (Tenn. 2002). Accordingly, because Jordan's parents have the superior right to maintain this action, the court will dismiss the claims of Aaron Bonne, Brooke Bonne, Trey Bonne, and Andrew Bonne.

## Conclusion

For the reasons stated above, defendants' joint motion for summary judgment [Doc. 16] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to the claims of Aaron Bonne, Brooke Bonne, Trey Bonne, and Andrew Bonne. In all other respects, the motion is **DENIED.** The parties will prepare the case for trial.

The parties motions for oral argument on the summary judgment motion [Docs. 28, 33] are **DENIED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge